Our next case is Avid Technology, Inc. v. Harmonic, Inc. 15-1246. Mr. Castanhas, we're ready when you are. Thank you, Your Honor. And I see that, Counselor, you reserved three minutes of your time for rebuttal. I have. You may proceed. Yes, may it please the Court. There are two issues in this appeal. And if I could, Judge Rainey, I'd like to just take a moment to sketch out where I'd like to go with my argument this morning. And then you can tell me if you'd like me to go somewhere different. We will. We've met. The first and central issue on this appeal is resolved by the straightforward application of this Court's rule that the scope of a prosecution disclaimer must be clear and unambiguous. The District Court erred in this case by finding that we had a clear and unmistakable. Clear, unmistakable, unambiguous, all of those words are used interchangeably. And what we don't have here is a clear, unambiguous, unmistakable disclaimer of a central controller that only does one thing, which is to identify the location of data. And if I could sort of, the second place I'll go, by the way, with this. Is it a fair shorthand to say that acts as a central address repository and nothing more? As long as we understand that access means the two things. I'm sorry, acts, space as a central address repository. That is what Judge Sleet held the disclaimer was, was that we disclaimed that kind of central controller. And if I could, the second point that I'll raise in a moment, I hope, will be the remedy for this prejudicial legal error in the instructions from the claim construction. But if I could just zero in on Judge Sleet's claim construction order, and in particular the footnote one at page 89, and we'll bridge over a little bit to page A90, and this is in the back of the blue brief. You'll see in footnote one a block quote, and that block quote is from the prosecution history at page A582 of this appendix. And what you will see from the prosecution history is the further, and this is halfway down in the block quote, further the claim system by virtue of the independent storage units. And that's the claim limitation we're talking about here, which had just been added in this filing. Avoid using a central controller to access data. I'm sorry, I'm at the bottom of page A89, Judge Sleet's claim construction ruling in footnote one. And this is in the block quote, and then it goes on to say in particular, storage units receive requests from one of the client systems for a segment of a file. Clients do not issue requests to a central controller that in turn, one, my number, identifies storage units that store the data, and two, issues requests to storage units. And then if you look at the same page in Judge Sleet's own shorthand of what he has just read there, he says in particular, the above prosecution statement in particular cannot use a central controller that identifies the storage unit on which data is stored in response to client requests. So what he has done, by what I think was perhaps an infelicitous shorthand there, was to take out the essence of what a controller is, which is something that controls or manages. Something that can issue a direction. And this was made lethal at trial because the evidence was unopposed. That the accused product here, the client in the media grid accused product, communicates directly with the content server. That can be found at page A2305, and that's out of the mouth of... But gets the address from whatever the central... It gets the address from a table, and of course that has to happen. It doesn't have to come centrally. There could be local caches of all the addresses. It could be local, but there are other aspects of this patent that make clear that just getting... Whatever else it has to do, it has to do more than act as a central address repository. That's right, and that is our basic submission. You're arguing not so much that the proposed claim construction that you proposed about transit of the information through the controller is right, because that I think your argument is substantially weaker on. Rather, you're arguing that the claim construction given to the jury is wrong, even if yours is also wrong. Well, we have focused on the error of the district court's claim construction, and in particular the amendment. I think that our claim construction was substantially correct, but I'm not here to defend that right now. I'm here to show the prejudicial legal error. It's entirely possible that the disclaimer would include... Would also cover something that doesn't send the information from the storage unit through the controller to the client, as long as it does the two things that are on either side of the and clause in the crucial sentence. I suppose that's possible, but that's exactly the error here, and that is that those two limitations of the controller were not charged here. And just to jump ahead for a minute, you would be entitled to a new trial at a minimum, if you're right about that, and then the question... And that's actually my second issue, which is what's the remedy for this error? Right, and the jury was not asked to and didn't separately say we find non-infringement on two independent grounds. That's right. I don't know a district judge who would give a special verdict that would claim the limitation by claim limitation, though that certainly would be helpful here. And so what we have left here is the infiled limitation. Well, we're not done. Oh, no, I'm happy to talk some more about the quality of the evidence here, but quite frankly is... Well, it's not just quality of evidence. There are two relevant passages that were relied on and that are the key to all of this. You know, on opposite sides of the same page in the joint appendix. One is the language about the controller, and then the other is the distinguishing of bold. Right. What's your view of the language distinguishing bold? Right, and let me go on to that because then we can flip to page A583 of the joint appendix and talk about that. But actually maybe the first place to start is the last line of page 582, which is right after the definition of the central controller. And there's a new single sentence paragraph that says each storage unit thus operates independently of the other storage units. So now the prosecutor and the inventor have made clear they're talking about the new addition of independent in the claims there. The independent storage units. Now we turn over to 583. In contrast, neither the admitted prior art, nor bold, nor Valhalla teaches this combination of limitations found in claim one as amended. What is that combination of limitations? That's all of the limitations that are set forth in this paragraph above the definition of central controller on 582. How do we know that? We know that because of the more particularly paragraph where he says, where the inventor and the attorney say bold is not relevant to the present invention. And they go on to say in contrast, the present invention relates to a distributed storage system. That's in the preamble. That's an entirely different part of the claim. In which data for a file is distributed among multiple independent storage units. Bold's assignment of a client to a server through a centralized interface for its transaction is contrary to the claim limitations noted above. The whole point here is that bold is not a distributed file storage system. Each file is on one server in bold. And that's what the inventors are distinguishing away here. But at the very least what we have here is something that's not clear, not unambiguous, not the terminology, Judge Rainey, of which you used, unmistakable. It's certainly not unmistakable because it's not talking about independent storage units. Now, if I could move on to the question of what the remedy might be if we are correct on this claim construction argument. With regard to this limitation, the evidence is clear. There is no central controller. You can look at page A2305. That's Dr. Levy, their own expert. He's asked by Mr. Yoon. Can you remind me, does the other side contest the proposition that if the central controller doesn't have to do any more than act as a central address repository that that claim element is met? I don't see that in their briefs, but I think that's a question better asked of my friend. But I will just point you to A2305 where Dr. Levy is asked, does the client in the media grid communicate directly with the content server? Answer, yes. That means it's not a central controller under the correct definition. So that claim limitation is met. There's much more evidence, and it's summarized in our brief, Your Honor, but that's the one that I wanted to highlight for you in my limited time this morning. Now we come to the infiles limitation, which was the only other ground on which my friends defended our claim of infringement at trial. Can I ask you a question? Yes. This is a little bit before you get into that issue, but what if we think that Judge Steepe was correct in denying your JMAL on the infiles issue? Do you need a new trial even though... Yes. And why? And how is that consistent? Let me go ahead and answer that question. Well, if you finish your question, I think you might be asking about YMR. There's some cases like Verizon Services Corp versus Cox Fibernet, for example, where because there was an independent ground for affirming the jury verdict, we did not remand for a new trial. So we've got a black box verdict. We don't know which limitation or limitations was found to be not met by this jury. We have a prejudicial legal error in the first part of the instruction. With regard to the infiles limitation, it seems then that it's the burden on my friend on the other side to show that it's harmless error. The only way they could show harmless error is to show that no reasonable jury could have found the infiles limitation to be met. In our case, it's of course exactly the opposite. The only reading of the infiles limitation is that these are infiles, because files are not physical things, but they are a virtual construct that can leap across the various storage units. That's very clear from the specification. But the case that my friend on the other side cited was a case from the early years of this court, and that has to do strictly with whether we're entitled to JMOL, or at that time it was called JNOV. If, as Weimar says, Weimar v. Rollform says, if we can't show that we're entitled on both grounds, then we can't get JMOL or JNOV. But what we can get because of the prejudicial legal error is a new trial. Did you ever object at trial Harmonic's evidence through the testimony and his expert concerning the plain and ordinary meaning of infiles? Do we object to the testimony? No, we did not. We put in our own testimony, thinking that the jury would properly get to the result. How about the jury instruction? We suggested that the plain and ordinary meaning should control. But you didn't object? Well, we also proposed, if I could, Your Honor, we also proposed an alternative construction. They proposed a construction as well. But no, we actually proposed that it be plain and ordinary meaning. But our argument here, Judge Rainier, is not a claim construction argument. It is a sufficiency of the evidence argument. It is that their evidence does not show the presence of the infiles limitation. And if I could just go a little bit into detail on that. And I'll take 30 seconds, I hope, to just point you to the and wherein for each file, the segments and the redundancy information for each segment are distributed among the plurality of storage units. That is the part that my friend on the other side in his evidence completely ignored. They treated a file as though it is a physical thing that has to reside on a single storage unit. And it's not. A file can be in segments that are distributed across the different storage units. And the file is the combination of those things together. And if you want to see the evidence that proves that under the only plain and ordinary reading of this language that we should prevail, it's again Dr. Levy, page A2327 to A2328, where he says that those are files and the files have segments that are distributed across. I've got a little bit of time left for rebuttal. I thank the Court's indulgence. I feel as if I just saw a David Copperfield performance in Las Vegas. Because in the waning moments on the in-files issues, counsel did ledger domain that would turn precedent on appellate review of jury verdicts upside down. When Judge Stoll asked about in-files, counsel said, well, to affirm on that ground, you'd have to rule that no reasonable juror could have found against us. That doesn't even make sense. I don't think that's what he was saying. He was talking about a trial and whether there would be a remand for a new trial. But this is an alternative ground for affirming. And the burden is not the appellees to show that no reasonable juror could have ruled against them. It is the appellants to show that there was no substantial evidence to support the jury verdict. That would be their burden to secure a judgment as a matter of law of infringement from us. That's not their burden to secure a new trial when there has been a prejudicial error of instruction on the other claim element. And on that element, non-infringement is necessary as a matter of law. And we have no idea if that element was the only one that the jury agreed with you on or whether they did on both. No, Your Honors, it's often the case with review of a jury verdict. But here, there were two grounds litigated throughout. There were two grounds that were the basis of the Jamal motion. And there were two grounds briefed here. And I'd like to turn to in-files first, if I may. It got very little play because the standard of review is substantial evidence, not de novo review. So I can understand why an appellant wouldn't want to do that first. There was substantial evidence before the jury to support the conclusion that MediaGrid, Harmonic's product, does not store data on the servers in files. Remember, the claim language says, quote, wherein the data is stored on the plurality of storage units in files, close quote. Your Honors will recall from the prosecution history that the examiner rejected the application on this ground. The originally filed claims involved segments, and the examiner held those as unpatentable in view of the prior art, namely the Vahalia patent, which was for video file servers. That's at A4287-91. In response, AVID amended the claims in two respects. It removed the language about saving segments on the storage unit servers. Would you agree that there's a difference between the content files, which are the actual original movie files, and the files that are contemplated by the in-files limitation? Absolutely, Your Honor. You're reading it correctly. In the second, AVID added the requirement that the segments be stored in files on the storage units. That's in the record at 4310-15, 1927, and 2278. As a result, that meant that under these patents, it is insufficient to store the segment on the storage unit. The segment must be stored in a file. I thought I heard counsel say, I may have misheard, that they did proffer a construction of that. I didn't try the case below. My colleague did. But I didn't see that in the record, that the court considered a construction of in-files. I thought both sides agreed it was an ordinary term for the jury to apply. How did the in-files limitation during prosecution history, that limitation was added, do you know how it got around Vahalia? Yes, because Vahalia allowed the user to store data in segments, or as we call them, slices. And that's why the examiner rejected the claim. So to get around that, if you look at the red line in the prosecution history, they marked out segments and they put in in-files. So that was enough to get them past the examiner. The evidence before the jury... There's a description somewhere, maybe it's in cross-examination, quoting one of your documents that says, the slices are stored in files. It was a marketing document, correct. Right. And is that just incorrect? It was marketing talk that the jury had. Every once in a while, marketing is accurate. It was before the jury. The jury had the brochure. And I want to follow up on something that continues to confuse me that I think Judge Stoll asked about. And maybe you can just clear this up. It seems to me there's one possible application of the term file, and that's the content file, what the client would recognize as a file. And then there's another possibility, namely that the set of storage units organizes its memory in something that it regards as files. When I looked at the testimony that your brief cited for your witness having said, no files, no files, it was all about how the storage units, your content servers, is that what they're called? Yes. Content servers. Don't recognize the content file, that is the one that the client would understand as a file. I did not see anything cited for the idea that your content servers don't organize what they do in its own filing system. Can you clarify this? I understand the question. You're right, but there was ample testimony from both sides that the content servers do not store the data in files. They store it in slices or segments, which are the same thing. The content files that you're talking about, that could be a video clip of a kid's graduation or an audio clip. Those are on the client device. That's not what goes on the content server. They share the word file, but it's a totally different thing. And the media grid content servers don't know anything about what that file is. Right. But if each storage unit has its own filing system and it calls the slices a file, why is it that when you read the claim language, it says the data is stored on the plurality of storage units in files. Does that simply mean, as I gradually came to believe, and you can correct me, that this whole dispute is about what has to be in one of those files. More than one slice plus redundancy, not whether the thing is stored in files. Both assumptions in your question respectfully are contradicted by the record in the prosecution history. It is not the case that the content servers arrange things in files or have a file system. The content director in media grid is the central controller that assigns the slices to the different content servers. So this is not at all something where there's a file structure on the content server. But you don't need my word for it. The record is elusive. Put aside the business about multiple. When you say put it aside, an S at the end of the word counts for something. It is a plurality. It is not a singularity. What I'm trying to do is understand whether, as your red brief argues, you have a freestanding contention that there is no storage of anything in files in your content servers. Correct. A2329, 2326, and 2330. Let's go to the videotape. Our expert, Dr. Levy. Sir, why do you disagree with, bear with me on this, Dr. Gandhari, I'm going to call him Dr. G, why do you disagree with Dr. G with regards to his opinion that the media grid system stores files? Answer, Dr. G seems to identify the content file as the files that are stored on the content servers. But in fact, that client file or content file is not what's stored on the content server. Question, what's stored on the content server? Answer, the slices. None of that. I guess this is where I want to make sure we at least understand each other. It seems to me that what this says is the content file doesn't appear as a file on the storage unit. It does not say that the content servers aren't storing their slices in their own files. But the next quote that I want to read to you does. A2318, Dr. Levy testified that the content servers do not store data in files, have no knowledge of content files, and known only slices. And guess who agreed? Dr. G, A1964, quote, now you agree, sir, that the content servers are storage units for storing slices, correct? Answer, that's right, yes. Now, Dr. G went on to say he thought that satisfied the in-files requirement, and that's why God created the jury. They had the evidence from both sides, and they decided it. Let me turn briefly to independent storage units. Twice my opponent read to you, he read from the construction order, and then when Judge Taranto asked him about the prosecution disclaimer, he read from that. But both times he omitted the prize inside the Cracker Jacks. In the record page 4318, having had the application rejected by the examiner because of Bohl, which uses a controller, they said, quote, and this is the part you didn't hear from AVID, more particularly, Bohl is not relevant to the present invention. Bohl deals with distributing transaction requests for multiple clients to multiple servers. In Bohl, a client asks a centralized interface 24 to provide access to a server, and receives from this interface an identity or connection data for a server to which the client is assigned. The client then performs the transaction with the assigned server. In contrast, the present invention relates to a distributed storage system in which data for a file is distributed among multiple independent storage units. Bohl's assignment of a client to a server through a centralized interface for its transaction is contrary to the claim limitations noted above. I read that without the typos. So let's say that I understand your argument, okay, but what about claim 19? And in your red brief on page 40, you say there's a significant difference between the passive central database and the 309 patent claim 19 and the active central controller that AVID disclaimed. What is this difference? Well, I sit there and I look at claim 19, and to me it undermines any notion that there's a clear and unmistakable disclaimer. And so what's your response to that? Claim 19 seems to claim directly what you say was disclaimed. But if you have a claim that's repudiated by the statement made to the examiner in order to obtain approval of the patent, you can't just ignore that disclaimer. So your view is that that later claim, that it's in a continuation, that that claim, which then later claims, let's say it later does in fact claim, exactly what you contend they disclaimed, there's no way that they can do that. There's no public notice at all that that's what's been claimed, even though it's plain in the language of the claim itself? But the claim wouldn't have been approved. That's why the disclaimer... It was allowed, wasn't it? It was allowed because they said, unlike Bohl, we don't have to go to a centralized device to get the address. But that was much earlier prosecution history, wasn't it? I don't know sequentially when it was met, Your Honor. But I know that that colored, that got the examiner to reverse himself. And if you look, the key diagram here actually is in Bohl. It's figure, and I don't usually do these charts because I get in trouble, but I believe it's Bohl figure one. And if you look at Bohl figure one in the patent, it will look kind of like the media grid director to you. What you see in Bohl figure one is... Can I just cut to what I think is the central point? They read the paragraph in Bohl, and I don't see why the language of the, not in Bohl, but the paragraph you read about Bohl from the prosecution history, as making a distinction about the number of servers that the client will deal with. They read it as saying, Bohl says we give you one. That's the one, a server, all singular terms. And as long as that is one reasonable interpretation of that ground of distinction, then the standard for unmistakable clear, blah, blah, blah, for finding a broader disclaimer based on Bohl is not met. That I think is their point about that paragraph. It's wrong, Your Honor. That is their argument. That is based on their argument that Bohl did not disclose a distributed storage system. So they read that paragraph that he doesn't want to read out to you. They read that as only applying to distinguish Bohl because it did not have a distributed storage system. If you look at the patents at A3432, 1 lines 61 to 65, and the patent A3435 at 7, 15 to 24, that's the Bohl patent, and it shows you repeatedly that it uses a distributed storage system. So to try to explain away their concession to the examiner by saying, well we weren't talking about the role of the server, we were just talking about distributed storage, makes no sense. I've used up my time. Thank you very much. Thank you very much. Thank you very much, Your Honor. Let's start with the in-files limitation. I find it rather surprising that we're here talking about Vahalia when the question is whether there was substantial evidence on the plain and ordinary meaning of the language that was presented to the jury. Vahalia wasn't part of that plain and ordinary meaning language. It wasn't part of the trial evidence in this regard. The question is was there evidence that supports it. What's your view about what the evidence showed and what was in dispute about the, let's call it, the two possible locations of the word file? Whether it's the storage system, filing system, if there is one or isn't one, or I guess... I think either satisfies the plain and ordinary meaning of the claim, and I think that's what this Court's case law says with regard to plain and ordinary meaning. But for you to get more than a new trial, you need to say that they do not have evidence from which a jury could take this unconstrued claim language and say, no, this file system, at least on the storage side, doesn't do it. I think there is no evidence here that would allow the jury to narrow the claim to only the storage side. Besides the marketing document, is there any evidence that says or even would allow a jury to conclude that the slice in the storage system is not a file as the storage system would recognize the word file? I think I'm trying to count knots in there to make sure. You're asking me whether there's evidence that will support or the evidence is clear that it will support our claim for JMOL on this limitation. Well, I'm asking, I guess... Is there anything alternative? About the files in the storage system, files here being something that the storage system views as a file, not what the content, what the client would... Honestly, I'm standing here, Judge Toronto, I don't know the answer to that question. The answer I would give you is twofold, though. One of which is to look at the testimony that Dr. Levy gave, where he says, there is a content file or client file shown here with the segments numbered 1 through 5. This is A2327. That would be an example like a movie. Correct, sir? Answer, that's right. Question. In the graphic shown here, that movie is broken up into five slices. Answer, that's right. He's testified about both files and slices being present there. Again, when you look at the written description of this patent, that probably shouldn't be at issue here on sufficiency, but a file is not a physical thing that's located in one place. It is across servers. If you look at the written description at A3642, column 13, lines 20 to 22, and 3642, column 14, lines 12 to 15. With regard to the independent storage units and central controller issue, I will simply comment that all of the problems with claim 19, as well as the disclosures of the embodiments at column 7, lines 35 to 39, disappear if you read the disclaimer in the limited way that we urge. If you read it my friend's way, then all of those problems, Judge Stoll, remain. Thank you again, Your Honor, for your indulgence. Thank you.